# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 6, 2023

Lyle W. Cayce
Clerk

No. 23-30253

Jason E. Walls, *individually and on behalf of* his *deceased* father, William E. Walls; William Walls, *individually and on behalf of* his *deceased* father, William E. Walls,

*Plaintiffs—Appellees*,

*versus*

Sheriff's Office of Caddo Parish; Ryan Chapman; Stephen W. Prator,

*Defendants—Appellants*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:22-CV-579

_____

Before Jolly, Engelhardt, and Oldham, *Circuit Judges*.

Per Curiam[*]:

William E. Walls died of a heart attack he suffered while detained in the back of a Caddo Parish, Louisiana, patrol car. His survivors filed a civil rights lawsuit against a Caddo Parish deputy, the Caddo Parish sheriff, and the Caddo Parish Sheriff's Office. The defendants removed the lawsuit to

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5

No. 23-30253

federal court and moved to dismiss several of the plaintiffs' claims. As relevant to this appeal, the deputy invoked qualified immunity to dismiss the plaintiffs' excessive force claim against him. The district court denied qualified immunity. The deputy appealed. We AFFIRM.

I.

A.

On appeal from a denial of qualified immunity at the motion to dismiss stage, "[w]e must accept all well-pleaded facts as true, draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *see also* FED. R. CIV. P. 81(c)(1) (federal pleading rules apply to actions removed from state court). Here, the petition alleges the following facts.

On March 9, 2021, Caddo Parish Sheriff's Office Deputy Ryan Chapman and other deputies attempted to execute an arrest warrant for Chad Deloach. The deputies believed that Deloach was living on William E. Walls's Keithville property. When the deputies arrived at the property, Walls told them he did not know Deloach's location and cooperated with their investigation. Walls invited the deputies into his home so they could search for Deloach. Walls also offered to call his son, who lived in a separate trailer on his property, and ask him where Deloach was. Deputy Chapman rejected Walls's offer, cursed at him, threatened him, and ordered him back inside his home. Walls obeyed but revoked consent for the deputies to re-enter his home.

Upon returning inside his home, Walls observed the deputies searching the exterior of another residence on his property. As Walls watched the deputies through the windows of his home, he held his phone. Chapman saw Walls with his phone and thought that he was videotaping the deputies.

No. 23-30253

In response, Chapman forced his way into Walls's home. Chapman "forcefully grabbed" Walls, ROA.16, threw him against his kitchen counter, ROA.19, handcuffed him, ROA.16, "aggressively and violently" pulled him from his home, ROA.19, "slammed" him against the hood of the patrol car, ROA.19, and "forced" him into the back of the car. ROA.19.

After a short period of time detained in the patrol car, Walls (a senior citizen) suffered a heart attack and stopped breathing. The deputies pulled him from the patrol car and administered CPR. Walls died at the scene.

B.

Walls's two surviving sons (hereinafter "plaintiffs") filed a lawsuit in Louisiana state court against Chapman, Caddo Parish Sheriff Stephen Prator, and the Caddo Parish Sheriff's Office. They asserted claims pursuant to 42 U.S.C. § 1983 and Louisiana state law. The plaintiffs asked for money damages and costs.

The defendants removed the lawsuit to federal court and moved to dismiss several of the claims under Rule 12(b)(6). As relevant to this appeal, Chapman invoked qualified immunity as a defense to the § 1983 excessive force claim. The district court denied Chapman's qualified immunity defense, and Chapman timely appealed. Our review is *de novo. See Club Retro, L.L.C.*, 568 F.3d at 194.

II.

Plaintiffs seek money damages from a law enforcement officer. To win, they must overcome qualified immunity. That means they must show (1) that Chapman violated Walls's constitutional rights and (2) that the right at issue was "clearly established" at the time of the alleged misconduct. *See Salazar v. Molina*, 37 F.4th 278, 281 (5th Cir. 2022) (citation omitted).

Deputy Chapman challenges only the second requirement—clearly established law. So that is all we address.

Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quotation omitted). It "shields officers from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam) (quotation omitted). "[T]o show a violation of clearly established law, [the plaintiff] must identify a case that put [the officer] on notice that his specific conduct was unlawful." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (per curiam).

Courts must be careful "not to define clearly established law at too high a level of generality." *City of Tahlequah*, 595 U.S. at 12 (quotation omitted). "[S]pecificity is especially important in the Fourth Amendment context . . . ." *Rivas-Villegas*, 595 U.S. at 6 (quotation omitted). In particular, "excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (citation and quotation omitted).

The Supreme Court has never said that circuit precedent is sufficient to put officers on notice of their constitutional obligations. *See Wesby*, 583 U.S. at 66 n.8 ("We have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity."); *see also Boyd v. McNamara*, 74 F.4th 662, 672 (5th Cir. 2023) (Oldham, J., concurring in part and dissenting in part). But our court has repeatedly said that circuit precedent can clearly establish the law. *See, e.g.*, *Boyd*, 74 F.4th at 670–71 (majority op.).

Assuming our precedent can clearly establish the law, two of our cases are relevant here. *See Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008); *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009). In *Bush*, we denied qualified immunity where the officer slammed a compliant arrestee's face into the window of a nearby car, injuring her jaw and teeth. *See* 513 F.3d at 500–02. And in *Deville*, we denied qualified immunity where the officer pulled over a woman for speeding, ordered her out of the car, and then (when she did not comply) broke the vehicle's window, pulled the woman out, and caused her multiple injuries (including "contusions to both wrists, neuropathy of her hands, right shoulder strain, left shoulder bruising (with hand prints), and multiple cuts caused by broken glass"). *See* 567 F.3d at 167–69.

Under *Bush* and *Deville*, the district court did not err. On the well-pleaded facts of this case, Walls was not suspected of any crime, posed no immediate threat to the safety of the deputies or others, and made no attempt to actively resist arrest or evade arrest by flight. Chapman violently seized Walls only because Chapman mistakenly thought Walls was videotaping the officers. There was no evidence that Chapman's actions were compelled by necessity and exigency. Walls was injured in the arrest and then died. Assuming the truth of the facts as pleaded, Chapman violated clearly established law.

AFFIRMED.